**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MIKE FREDERICK BWONDARA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-00813-O-BP** |
| | § | |
| **TARRANT COUNTY, TEXAS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUGE**

Before the Court are the complaint that *pro se* Plaintiff Mike Frederick Bwondara filed on

July 30, 2025, and his answers to the Court's questionnaire filed on September 26, 2025. ECF Nos.

1 and 24, respectively. The case was referred to the undersigned pursuant to Special Order 3 on

August 4, 2025. ECF No. 10. By Order dated August 5, 2025, the undersigned granted Bwondara

leave to proceed *in forma pauperis*, subject to judicial screening under 28 U.S.C. § 1915. ECF No.

14. After considering the pleadings and applicable legal authorities, the undersigned

**RECOMMENDS** that Chief United States District Judge Reed O'Connor **DISMISS** this case

**WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) because Bwondara fails to state a

claim upon which relief can be granted and seeks monetary relief against defendants who are

immune from such relief.

**I.    BACKGROUND**

In May 2025, Bwondara was tried in state court for driving while intoxicated ("DWI").

*E.g.*, ECF No. 24 at 3. On May 8, Judge Brian A. Bolton of Tarrant County Criminal Court No. 9

adjudicated Bwondara guilty and sentenced him to eighteen months of probation. *Id.* at 2.

Bwondara appealed. In late June, the Second Court of Appeals abated the appeal pending resolution of certain factual determinations, and Judge Bolton held a hearing to that end on June 27. Bwondara alleges that sometime during that hearing, Judge Bolton admitted that one of the witnesses in Bwondara's trial had been Judge Bolton's daughter's biology tutor. *Id.* at 1.

As a result, Bwondara filed an emergency motion to recuse Judge Bolton for alleged impartiality, but Judge Bolton declined to recuse himself. ECF No. 1 at 8. The next day, on July 10, the court referred Bwondara's motion to Judge David L. Evans, presiding judge of the Eighth Administrative Judicial Region of Texas. Judge Evans found that Bwondara's motion "fail[ed] to meet the requirements of Texas Rules of Civil Procedure 18a(a) because it [was] not verified and [did] not state with detail and particularity admissible facts that would justify recusal or disqualification if proven." *Id.* Judge Evans too denied the motion to recuse Judge Bolton. *Id.*

On July 30, Bwondara sued both Judge Evans and Judge Bolton in this Court for civil rights violations under 42 U.S.C. § 1983, seeking monetary and injunctive relief. *Id.* at 3-4. He argues that Judge Evans erroneously applied the Texas Rules of Civil Procedure and not the Texas Rules of Criminal Procedure, resulting in entry of a void order. ECF No. 24 at 1.

Bwondara alleges that Judge Bolton was not only impartial in the DWI trial but improperly denied all of his pre-trial motions without hearings, allowed fabricated evidence and noncredible testimony into the record, and illegitimately continued to exercise authority in Bwondara's state case after Judge Evans' entered the "void order." *Id.*

In addition to the judges, Bwondara also sues Clerk Clarissa Hodges of the Fort Worth Court of Appeals for civil rights violations. ECF No. 1 at 1. He alleges that Hodges suppressed records vital to his case, including the "reporter's record" from the June 27 hearing where Judge

2

Bolton allegedly admitted to judicial bias. ECF No. 24 at 1. Bwondara asserts that the Fort Worth Court of Appeals reinstated his appeal without "this required initial record ever being filed, which is a legal impossibility." *Id.* He also alleges that "[t]he Clerk's office has accepted and filed supplemental records" while the court reporter's record remains "suppressed," and this "manufactured 'incompleteness' is [being] used as the grounds to deny all [his] motions." *Id.*

Finally, Bwondara sues Tarrant County for civil rights violations and for an alleged racketeering conspiracy in violation of 18 U.S.C. § 1962. As a part of this alleged conspiracy, he also sues Armstrong Lab LLC (which the undersigned construes as Armstrong Forensic Laboratory ("AFLAB")), the laboratory that allegedly drew Bwondara's blood as part of the DWI investigation. ECF No. 24 at 2. He alleges that Tarrant County fabricated evidence, suppressed evidence in violation of *Brady v. Maryland*, and retaliated against him after he complained of judicial misconduct and corruption. *Id.*; ECF No. 1 at 4.

## II.    LEGAL STANDARDS

### A.    Screening under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii)

Because Bwondara proceeds *in forma pauperis*, his Complaint is subject to *sua sponte* dismissal if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). To state a viable claim for relief, Rule 8 requires a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(1). To be entitled to relief, the complaint must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To aid the Court in determining whether it should dismiss an *in forma pauperis* complaint, the Fifth Circuit has approved the use of questionnaires. *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985). A plaintiff's responses to such a questionnaire become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). The Court may also "take judicial notice of documents in the public record" like state court opinions. *Welsh v. Lamb Cnty.*, No. 22-10311, 2024 WL 81580, at *3 (5th Cir. Jan. 8, 2024).

## B.    *Pro se* pleadings

The Court subjects the pleadings of *pro se* parties to less rigid analysis than those of a party represented by counsel. "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825–26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits

4

rather than technicalities, and the Fifth Circuit thus recommends that suits be dismissed without prejudice on § 1915 dismissals. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As a result, courts generally allow plaintiffs at least one opportunity to amend following a § 1915 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Id.* at 329. An incurable defect may arise when a complaint's facts are "not actionable as a matter of law." *Id.* In such situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

The Court may also appropriately dismiss an action with prejudice if the Court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that the plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001).

### C.    *Heck* Doctrine

The preclusive doctrine outlined in *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny prohibits litigating cases where success on a claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486-87. Thus, *Heck* precludes a civil action where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000); *see Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (dismissing under *Heck* where claimant "could not prevail . . . without undermining the validity of his criminal convictions"). This "favorable termination rule" is an absolute bar to litigation "unless the plaintiff demonstrates that the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007). The Court should dismiss claims to which the *Heck* bar applies with prejudice, subject to the plaintiff's right to reassert those claims if any of the conditions under *Heck* are met. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (per curiam).

## III.    ANALYSIS

Bwondara alleges three causes of action that take this form:

> ### **IV. CAUSES OF ACTION**
> **COUNT 1: 42 U.S.C. §1983**
> > "Deprivation of Due Process (14th Amendment) through:
> > a) Void judicial proceedings
> > b) Evidence suppression (*Brady* violation)
> > c) Retaliation for exposing corruption"
>
> **COUNT 2: RICO CONSPIRACY (18 U.S.C. §1962)**
> > "Enterprise: Tarrant County judiciary + Armstrong Lab
> > Pattern: Evidence fabrication across 10+ DWI cases"
>
> **COUNT 3: DECLARATORY JUDGMENT**
> > "Seek declaration that all post-July 8 proceedings are VOID *ab initio*"

ECF No. 1 at 4.

There are five defendants in this case: Judge Evans, Judge Bolton, Hodges, Tarrant County, and AFLAB. ECF No. 1 at 1. But from the complaint, it is not clear which of those five defendants faces which of Bwondara's three causes of action. *See generally id.* Accordingly, the undersigned construes the Complaint to allege each of the claims against each of the five defendants.

6

**A.    Judicial immunity bars Bwondara's claims against Judges Evans and Bolton, and Hodges also is immune from his suit.**

**1.    Judge Evans and Judge Bolton**

Bwondara sues in part because of an alleged bias and other procedural errors in the state court system attributable to two state judges and the clerk of the Fort Worth Court of Appeals. However, "[i]t is well established that judges enjoy absolute immunity for judicial acts performed in judicial proceedings." *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996) (citation omitted). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Allegations of bad faith or malice do not overcome this immunity, which "applies even when the judge is accused of acting maliciously and corruptly." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Mireles*, 502 U.S. at 11). "There are two—and only two—circumstances in which immunity yields: when a judge acts outside [his] judicial capacity, or when [he] acts in the clear absence of all jurisdiction." *Jones v. King*, 148 F.4th 296, 301 (5th Cir. 2025).

As to Judge Evans, Bwondara does not allege that he acted outside of all jurisdiction. He asserts that Judge Evans' recusal order was void, but this allegedly was because Judge Evans applied civil and not criminal rules of procedure in reaching his conclusion. ECF No. 24 at 1. Bwondara does not argue that Judge Evans lacked authority in the first place to administratively review Judge Bolton's decision not to recuse himself from Bwondara's case. Accordingly, if Judge Evans is subject to Bwondara's suit, it must be because he acted outside of his judicial capacity.

"An act is not judicial simply because it is performed—or even commonly performed—by a judge." *Jones*, 148 F.4th at 300. Instead, a challenged act is judicial when it (1) is a "normal judicial function," (2) "occurred in the courtroom or appropriate adjunct spaces," (3) is "centered

around a case pending before the court," and (4) "arose directly out of a visit to the judge in his official capacity." *Ballard*, 413 F.3d at 515 (citation omitted). However, "[c]ourts need not march through all four factors if one 'overarching point' resolves the matter." *Jones*, 148 F.4th at 301 (quoting *Daves v. Dall. Cnty.*, 22 F.4th 522, 539 (5th Cir. 2022) (en banc)). "Some acts are 'clearly' judicial—or so 'inextricably linked' to judicial acts that no further analysis is needed." *Id.* The "hallmark" of a judicial act is the exercise of a discretionary judgment. *Id.*

Here, Judge Evans exercised his judgment in denying Bwondara's motion to recuse Judge Bolton. This is an ordinary, discretionary decision that is part of the duties of a Texas administrative judge. *See* Tex. Gov. Code § 74.092(a) ("A local administrative judge . . . shall: (1) implement and execute the local rules of administration, including the assignment, docketing, transfer, and hearing of cases."). Judge Evans' decision to deny Bwondara's motion inextricably occurred within his judicial capacity. Whether he applied the incorrect rules of procedure is irrelevant to the question of his immunity. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("A judge will not be deprived of immunity [only] because the action he took was in error."). For these reasons and because when asked, Bwondara could provide no facts suggesting any actions taken in Judge Evans' personal capacity, ECF No. 24 at 1, Judge Evans is immune from Bwondara's suit, and the Court should dismiss Judge Evans in both his personal and official capacities.

Regarding Judge Bolton, Bwondara alleges he acted at least in part outside of his jurisdiction. ECF No. 24 at 1. According to Bwondara, Judge Evans committed an "ultra vires act" in applying the Texas Rules of Civil Procedure instead of the Texas Rules of Criminal Procedure. *Id.* Because of this, Bwondara says, Judge Evans "created a jurisdictional blackout, meaning Judge Bolton's subsequent hearings and rulings, including the trial, were conducted without proper

8

jurisdiction." But Bwondara offers no legal support for this contention, nor is it readily apparent how an administrative judge's decision to deny a motion for a district judge's recusal would suddenly strip the district judge of jurisdiction. Judge Evans simply denied Bwondara's motion. ECF No. 1 at 9. Because Bwondara offers no legal authority nor a factual basis to support any contention that Judge Bolton acted outside of all jurisdiction, Judge Bolton can only be subject to this suit if he acted outside of his judicial capacity. The undersigned concludes he did not.

The Court's questionnaire asked Bwondara to state all facts known to him that he relies on to support his allegation that Judge Bolton acted outside of his judicial capacity. ECF No. 22 at 3. Bwondara responded with four examples:

> 1. Presiding over a trial after admitting a personal relationship with key witness Wren Busby ("my daughter's biology tutor") on July 27, 2025.
> 2. Denying all pre-trial motions without hearings, including motions to suppress illegally obtained evidence.
> 3. Allowing the entire trial to proceed based on fabricated evidence and testimony from witnesses with known credibility issues.
> 4. Continuing to exercise authority after the void order of July 10, 2025[] placed his jurisdiction in question.

ECF No. 24 at 1.

None of these examples is availing because at their core, they are the essence of judicial acts. Presiding at trial is a function so "clearly judicial," it requires no further analysis. *Jones*, 148 F.4th at 301. Likewise, the decisions a judge makes during or before trial to admit evidence into the record and to deny motions, including motions to suppress, are ordinary, discretionary exercises of a judge's judgment. Judge Bolton is accordingly entitled to absolute immunity for the decisions to which Bwondara objects.

Bwondara may take issue with these decisions, and he may contend that Judge Bolton erred

as a matter of law at any point, but the vehicle for these grievances is an appeal in the state court system, not a federal civil rights lawsuit against the judge. Whether Judge Bolton personally knew a trial witness does not change this result. Bwondara asserts that because Judge Bolton allegedly admitted that the witness Wren Busby had tutored the judge's daughter at some unspecified point in the past, this admission automatically pulled Judge Bolton out of his black robes and into his personal capacity for the balance of Bwondara's case. This is incorrect. The question of whether a judge acted outside of his judicial capacity concerns whether he did something non-judicial or without jurisdiction, not whether he made a legal mistake, issued an erroneous ruling, or even acknowledged that he knew a witness. *Id.*; *see also Severin v. Par. of Jefferson*, 357 F. App'x 601, 604 (5th Cir. 2009) ("It is well established that judges enjoy absolute judicial immunity from lawsuits that cannot be overcome [even] by allegations of bad faith or malice.").

Bwondara had an opportunity to present factual allegations to the Court showing that Judge Bolton acted outside of his judicial capacity, but he did not do so. Instead, his complaints relate purely to actions Judge Bolton took from the bench—not anything he did to Bwondara outside of the courthouse or outside of Bwondara's case. Because every action that Bwondara pleads occurred within Judge Bolton's judicial capacity, Judge Bolton is immune from Bwondara's civil rights suit, and the Court should dismiss Judge Bolton in both his personal and official capacities.

Finally, to the extent Bwondara seeks injunctive relief against the judges, judicial immunity does not bar prospective injunctive relief against a judicial officer acting in a judicial capacity. *See Pulliam v. Allen*, 466 U.S. 522, 536 (1984). However, to state a claim for such relief, Bwondara must allege that he has no adequate remedy at law and that he is exposed to a serious risk of irreparable harm. *Id.* at 537. Bwondara's pleadings do not satisfy either requirement. Any of the

10

rulings in previous and ongoing state cases are subject to the appeals process, which is legally adequate. *See Pleasant v. Sinz*, No. 9:15-cv-00166-MHS, 2016 WL 4613359, at *4 (E.D. Tex. Aug. 5, 2016) ("[Plaintiff] has an adequate remedy at law through the appeals process."). The Court should therefore dismiss Bwondara's claims for injunctive relief against the judges.

### 2. Hodges

Bwondara alleges that Hodges "manipulated" the appellate process "to create an inescapable procedural trap." ECF No. 24 at 1. Liberally construing the Complaint and his response to the Court's questionnaire, it appears that Bwondara alleges that Hodges "reinstated" the "initial reporter's record" from the June 27 hearing after it had been "suppressed." *Id.* She also allegedly "accepted and filed supplemental records while the foundational initial record remain[ed] suppressed," and overall allegedly suppressed certain records. *Id.*; ECF No. 1 at 3-4.

But immunity also largely protects Hodges' alleged actions in the case. "When a clerk of court files or refuses to file a document with the court, [s]he is entitled to immunity, provided the acts complained of are within h[er] professional functions." *Evans v. Suter*, No. H-07-1557, 2007 WL 1888308, at *3 (S.D. Tex. June 29, 2007), *aff'd*, 260 F. App'x 726 (5th Cir. 2007). To the extent Bwondara complains about Hodges' decisions regarding the filing of the court reporter's record from the June 27 hearing and other supplemental records, and her decisions regarding the timing of those filings, immunity protects the accordant actions she took. *See also Chancery Clerk of Chickasaw Cnty. v. Wallace*, 646 F.2d 151, 160 (5th Cir. Unit A Mar. 1981) ("[Clerks'] duty within the court is to accept and file papers in lawsuits . . . . [C]lerks are improper defendants against whom injunctive relief would be meaningless.").

Bwondara also alleges that Hodges suppressed records in his state case. ECF No. 1 at 3-4.

In its questionnaire, the Court asked Bwondara to state all facts known to him that he relies on to establish that any defendant "concealed, obstructed, tampered with, delayed, or otherwise suppressed records or other evidence." ECF No. 22 at 5. Bwondara answered as follows:

> The suppression began during discovery and continues:
> 1. Initial Reporter's Record (June 27, 2025): Proof of judicial bias and testimony about evidence fraud.
> 2. Blood Draw Warrant: Never existed, never produced.
> 3. FST Video & Protocols: Withheld to conceal NHTSA protocol violations.
> 3. Phlebotomist(Timothy Williams)& Officer Newman Credentials: Certification documents for the individual who drew the blood and for Officer Newman, who handled the blood vial, were withheld.(uncertified)
> 5. Armstrong Lab Full Files: The full investigative files related to the Brady disclosure were suppressed.

ECF No. 24 at 2.

These statements of fact do not allege that Hodges specifically took any action to suppress records or evidence. At best, Bwondara lists evidence he contends someone suppressed, but he does not allege which specific person took which specific suppressive action. Instead, he speculates that someone suppressed evidence, but he does not plead facts showing how Hodges (or anyone else) actually did so. Because of this deficiency and the heightened immunity that Hodges has as a clerk of court, the Court should dismiss Bwondara's claims against her. *See Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001).

Moreover, any eventual finding in Bwondara's favor on his claim of suppression of evidence in violation of *Brady v. Maryland* would necessarily imply the invalidity of his underlying DWI conviction. Therefore, because of the doctrine articulated in *Heck v. Humphrey*, there exists a second independent rationale that bars Bwondara's claim against Hodges. A plaintiff's § 1983 claim for civil rights damages that necessarily challenges the validity of a

criminal conviction or sentence is "not cognizable" where the plaintiff "cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (per curiam) (citing *Heck*, 512 U.S. at 486-87). And Bwondara cannot show that. In its questionnaire, the Court asked him about the status of his state case. ECF No. 22 at 8-9. He responded that it was still pending. ECF No. 24 at 3. The *Heck* Doctrine resultantly applies. For this additional reason, the Court should dismiss Bwondara's claim against Hodges in both her personal and official capacities.

**B.    Bwondara's claim against Tarrant County is largely barred and legally insufficient.**

In its questionnaire, the Court asked Bwondara to state all facts establishing that Tarrant County violated his rights, identify the specific rights that the believes the County violated, name the policymaker who allegedly violated his rights, and state the official County policy that allegedly violated his rights. ECF No. 22 at 7. Bwondara provided in full the following:

> Tarrant County's policies, as executed by its agencies, caused these violations:
> 1. Policy of Evidence Fabrication: Police forge DIC-24s; uncertified personnel handle critical evidence; lab "assumes consent" without warrants (4th Amendment).
> 2. Policy of Suppression: Withholding Brady material, court records, and personnel certifications (14th Amendment).
> 3. Policy of Retaliation: Filing baseless probation violations to punish federal litigation (1st Amendment).

ECF No. 24 at 2.

Because Bwondara cannot show that his criminal conviction for DWI in Tarrant County Criminal Court No. 9 has been "reversed, invalidated, or otherwise set aside," *Magee*, 912 F.3d at 822, he is not entitled to pursue a § 1983 claim regarding an alleged policy of evidence fabrication or suppression in his state case since "a judgment in favor of [Bwondara in this Court, on those

grounds] would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487. Bwondara may seek relief in the state appellate courts as a matter of right to pursue his grievances, but he is not entitled to sue the entities or persons he believes responsible for mishandling evidence in a separate proceeding in federal court unless and until his DWI conviction is reversed, invalidated, or set aside. The *Heck* Doctrine bars any claim he has against the County in this Court for the first two alleged violations.

Regarding allegations of retaliation, Bwondara contends in his Complaint that a trend of "SYSTEMATIC RECORD SUPPRESSION" "[a]ccelerated after [his] judicial misconduct complaints." ECF No. 1 at 4. Additionally, he listed "Retaliation for exposing corruption" as one theory of how the defendants deprived him of Due Process. *Id.* In his response, he also asserts that on September 2, 2025, a "[r]etaliatory probation violated [was] filed." ECF No. 24 at 3.

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. *Connick v. Thompson*, 563 U.S. 51, 61 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). So in bringing his § 1983 claim against the County, Bwondara must plead facts to show "not only that an individual state actor violated his constitutional rights, but that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Official policy is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking offices or by an official to whom the lawmakers have delegated policy-making authority" or "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated

policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Id.*

The second element of a § 1983 claim requires Bwondara to plead that the person acting on behalf of the municipality in violating his constitutional rights was an official policymaker. *Peterson*, 588 F.3d at 847. The policymaker must have final policymaking authority and take the place of the governing body in a designated area of the municipality's administration. *City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)*; *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984); *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). A municipality's governing body may delegate policymaking authority expressly or implicitly. *Bennett*, 728 F.2d at 769.

The third element of a § 1983 claim requires Bwondara to show that a policy is the moving force behind a constitutional violation. *Peterson*, 588 F.3d at 847. To do so, he must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski v. City of Hous.*, 237 F.3d 567, 580 (5th Cir. 2001). For an official policy to be the moving force behind a constitutional violation, the policymaker must have acted with "deliberate indifference" to the policy's known or obvious unconstitutional consequences. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. *Id.*; *see McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002).

Bwondara alleges that someone unlawfully retaliated against him, but he pleads no facts to show that the alleged retaliation resulted from an official County policy that an official

policymaker promulgated. Bwondara had an opportunity to state who in the County government unconstitutionally wronged him and how. ECF No. 22 at 7. Among other details, the Court asked him to "[b]e specific in describing all statements, acts, or omissions on the part of this Defendant that you claim demonstrate a violation of your civil rights." *Id.* For his allegation of unconstitutional retaliation, Bwondara merely and only insisted that an unspecified individual or individuals "[f]il[ed] baseless probation violations to punish federal litigation." ECF No. 24 at 2.

But this conclusory statement is not enough to meet the basic pleading requirement under the rules of procedure, let alone the elements of a § 1983 claim against Tarrant County. To demonstrate entitlement to relief, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Bwondara does not offer the Court enough facts, and therefore, his claim must be dismissed.

Bwondara also alleges that someone with the County "forced [him] to pay probation/IID fees despite court-declared poverty." ECF No. 1 at 4. He mentions this only once in his Complaint, and when the Court asked him to specify what harm County policymakers caused, he did not reassert this allegation in his response. *See* ECF No. 22 at 7, ECF No. 24 at 2. Bwondara mentioned "[h]omelessness due to prosecution-induced debt." ECF No. 1 at 4. To the extent he seeks to sue the Tarrant County District Attorney's Office, he is without remedy. Incurring costs because of the State's decision to bring charges is not actionable by means of suing the prosecutor. *See Imbler v. Pachtman*, 424 U.S. 409, 424-25 (1976) (reaffirming that prosecutors enjoy absolute immunity for the decision to prosecute). If Bwondara seeks to sue the County for unspecified other harm someone there caused him, he must plead more sufficient facts to state such a claim. In the absence

of those facts here, the Court should dismiss his claim against the County.

    **C.    Bwondara's claim against AFLAB is not actionable as it is not a state actor.**

The Court should dismiss Bwondara's claim against AFLAB because he does not state a claim against it as a matter of law. To sue under § 1983, Bwondara must show facts indicating state action. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004); 42 U.S.C. § 1983.

However, AFLAB is a private laboratory and Bwondara has not stated facts to contradict this conclusion. In general, a private entity does not engage in state conduct. However, a private entity can qualify as a state actor in a few limited circumstances. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). These include when the "private entity performs a traditional, exclusive public function," "when the government compels the private entity to take a particular action," "when the government acts jointly with the private entity," or "when the private entity is entwined with governmental policies, or when government is entwined in its management or control." *Id.*; *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "Deciding whether a deprivation of a protected right falls within one of these categories begins by identifying the specific conduct of which the plaintiff complains." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 444 (5th Cir. 2025) (internal quotation marks omitted).

Liberally construed, the Complaint states at most that AFLAB "[f]abricated DIC-24 evidence," "tamper[ed]" with unspecified "metadata," improperly "assume[d] [Bwondara's] consent" to a blood draw, and "never verified or produced" the certification of the technician who drew Bwondara's blood sample. ECF No. 1 at 3, 4; ECF No. 24 at 2. None of these allegations, even if true, show that AFLAB is a state actor or that its actions amounted to state conduct.

Bwondara pleads no facts to suggest that the County compelled or coerced AFLAB to take

any of the listed actions. For example, in one breath Bwondara concludes that AFLAB fabricated DIC-24 forms, ECF No. 1 at 3, and in the next alleges that it was the police who "forge[d] DIC-24s." ECF No. 24 at 2. Notwithstanding this inconsistency, it is unclear how police officers or County policymakers compelled AFLAB to engage in any kind of evidence tampering, or indeed if AFLAB even could.

Without other facts, there is nothing to suggest what involvement AFLAB had with the DIC-24 forms, which are statutory warning documents issued to individuals arrested for DWI in Texas. *See Statutory Warning DIC-24*, TEX. DEP'T OF PUB. SAFETY, https://www.dps.texas.gov/internetforms/Forms/DIC-24.pdf. The DIC-24 form requests that an individual consent to providing a sample of his breath and/or blood for analysis. *Id.* The arrestee then signs to indicate either his consent or refusal. *Id.* But this is a document that a law enforcement officer would hand someone at the time of arrest. Bwondara alleges that AFLAB "assume[d] [his] consent" to a blood sample, but this suggests that AFLAB never had Bwondara's DIC-24 form in hand, much less forged it. ECF No. 24 at 2.

Likewise, there is nothing in Bwondara's pleadings showing that the County directed AFLAB's alleged actions. Even if true that AFLAB tampered with metadata, assumed Bwondara had consented to the blood draw, and never certified the credentials of the technician who drew the sample, Bwondara states no facts that connect the County to these alleged errors.

Bwondara does generally allege a "RICO CONSPIRACY" between the "[the] County judiciary + [AFLAB]," ECF No. 1 at 4, but this is merely speculation. Bwondara states no facts to support this claim. For there to be joint action between a private entity and a state actor constituting state action, the conduct in question requires "an agreement or meeting of the minds between the

state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024) (citation omitted).

Alleging a conspiracy does not by itself substantiate an allegation of conspiracy. And an allegation is all Bwondara appears to have. He states no facts supporting the existence of an agreement between the County and AFLAB, a joint enterprise between them, compulsion by the County, or facts suggesting AFLAB was "entwined" with the County such that AFLAB "had a 'role in enacting or enforcing'" the County's policies. *Pearson*, 133 F.4th at 444 (quoting *Rundus v. City of Dall.*, 624 F.3d 309, 314-15 (5th Cir. 2011)).

Moreover, the blood draw that AFLAB performed does not constitute a traditional, exclusive public function. "[T]o qualify as a traditional, exclusive public function . . . the government must have traditionally *and* exclusively performed the function." *Halleck*, 587 U.S. at 809 (emphasis added). Functions that qualify are "very few" in number. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978). While "many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Julapalli v. Bloom*, No. 24-20276, 2025 WL 314123, at *3 (5th Cir. Jan. 28, 2025) (quoting *Flagg Bros.*, 436 U.S. at 158). A private laboratory does not become a state actor simply because it "serves the public good or the public interest in some way." *Halleck*, 587 U.S. at 809.

Even liberally construed, Bwondara's pleadings show that AFLAB's function in the case was for its technician to draw a sample of Bwondara's blood. *See* ECF No. 24 at 2 ("individual who drew blood"); *id.* ("warrantless blood draw"); *id.* ("The blood draw was performed by a phlebotomist."). Presumably, the result of that test was relevant to the County prosecutors to

determine Bwondara's blood alcohol content, and that blood sample faced analysis at some point to produce that quotient. But Bwondara does not allege it was AFLAB that conducted that analysis, nor does he complain about any analytical findings.

Indeed, the pleadings do not allege that anyone performed any analytical role. The facts show that a private entity drew Bwondara's blood, and Bwondara's complaints against AFLAB stem solely from the gathering of the blood sample—not the phlebotomist's or the laboratory's analysis of it. Consequently, the undersigned cannot conclude that the act of drawing blood constitutes a traditional, exclusive public function that transformed AFLAB into a state actor. It is common knowledge that numerous nongovernmental healthcare providers and other private entities have drawn blood samples as a matter of course for decades.

Even if Bwondara had stated facts showing that AFLAB analyzed his blood, the undersigned's conclusion would be the same because a private laboratory's analysis of a biological sample does not constitute a traditional state function. *See Duncan v. Texas*, No. 3:15-cv-711-L-BN, 2015 WL 7566270, at *7 (N.D. Tex. Sept. 17, 2015), *rec. accepted*, No. 3:15-cv-711-L, 2015 WL 7450497 (N.D. Tex. Nov. 24, 2015). In that case involving analysis of a hair sample, the Court concluded that "'scientific testing of physical evidence' does not 'constitute[] a traditional state function'" absent a "state statute showing that [] laboratory testing was required by state law." *Id.* at *7 (quoting *Nygren v. Predovich*, 637 F. Supp. 1083, 1088-89 (D. Colo. 1986)). Bwondara has not pleaded any facts to show that state law required such testing here.

Accordingly, because the undersigned concludes that AFLAB does not meet the definition of a state actor, the Court should dismiss Bwondara's claims against it.

### D.    Bwondara's claims under Title 18 of the United States Code against all defendants are not actionable.

In his Complaint, Bwondara also claims a "RICO CONSPIRACY" in violation of 18 U.S.C. § 1962 involving a racketeering enterprise containing the County judiciary and AFLAB designed to fabricate evidence. ECF No. 1 at 4. But § 1962 is a criminal statute, and the law does not permit Bwondara to pursue criminal action against the defendants. "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124 (1979). While 18 U.S.C. § 1964(c) does create a private right of action for a violation of § 1962, this only permits suit where "[a]ny person [is] injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1962(c). Bwondara pleads no facts that would support his claim under this definition.

Further, because Bwondara's RICO claims appear to rest on alleged fraudulent activity (fabricating evidence), Federal Rule of Civil Procedure 9(b) applies. *Kode v. Williamson Cnty.*, No. 1:23-cv-1223-RP, 2024 WL 4404498, at *4 (W.D. Tex. July 8, 2024). This rule provides for a heightened pleading standard, requiring Bwondara to "specifically allege how each act of fraud furthered the fraudulent scheme, and how each defendant participated in the fraud." *Id.*; Fed. R. Civ. P. 9(b). Bwondara's pleadings do not meet that heightened standard. *See* ECF No. 1 at 4.

Because there is generally no private cause of action for the violation of a criminal statute, and because there is none applicable to this specific context, the Court must dismiss every claim Bwondara brings under 18 U.S.C. § 1962 for failure to state a claim. *Pierre v. Guidry*, 75 F. App'x 300, 300 (5th Cir. 2003).

### E.    The Court cannot grant the declaratory relief Bwondara seeks.

Bwondara's third cause of action seeks a "Declaratory Judgment." ECF No. 1 at 4. The

undersigned construes this as a mislabeled request for relief. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996); *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only, not substantive.").

The Court cannot grant declaratory relief where there is no valid underlying claim. Because the Federal Declaratory Judgment Act "does not create an independent cause of action, a court must also [e]nsure that the declaratory-judgment [sought] . . . is based on a valid cause of action." *Hopkins v. Cornerstone Am.*, No. 4:05-cv-332-Y, 2009 WL 10721229, at *3 (N.D. Tex. June 15, 2009). Where there is no actionable controversy between parties, there can be no declaratory relief. *Id.* (citing *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999)). As the Court must dismiss each of Bwondara's claims, there is no actionable controversy in this case. As a result, the Court should decline to grant Bwondara the declaratory relief he seeks.

### F.    The Court should dismiss Bwondara's case without leave to amend.

It is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v.*, 281 F.3d at 161. Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones*, 188 F.3d at 327.

Bwondara brings three claims, two of which (his RICO and Declaratory Judgment claims) are non-actionable. Judicial immunity, quasi-judicial clerk immunity, and AFLAB's position as a private actor bar his § 1983 claims against the judges, Hodges, and AFLAB, respectively. The *Heck* Doctrine and separate pleading deficiencies foreclose his claim against Tarrant County. The Court offered Bwondara an opportunity to specifically state the Tarrant County policies and policymakers that allegedly harmed him, ECF No. 22 at 7, but Bwondara only answered with an

unspecific "policy" of retaliatory "probation violation" filings. *E.g.*, ECF No. 24 at 2. The undersigned thus concludes that Bwondara has pleaded his best, though legally insufficient case, and further amendment would be futile for each of Bwondara's claims. Accordingly, the Court should dismiss Bwondara's claims without leave to amend.

## IV.    CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DISMISS** Bwondara's Complaint **WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district 6 court, except upon grounds of plain error. See *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on October 17, 2025.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE